UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

INTERNATIONAL PAINTERS AND          *
ALLIED TRADES INDUSTRY PENSION
FUND, *et al.*,                     *

    Plaintiffs,                 *

v.                                  *          Civil Action No. EA-24-3564

INDUSTRIAL PAINTING AND             *
RIGGING, INC.,
                                    *
    Defendant.

                                    *

**MEMORANDUM OPINION**

On December 10, 2024, Plaintiffs International Painters and Allied Trades Industry

Pension Fund (Pension Fund); International Painters and Allied Trades Annuity Plan (Annuity

Plan); Daniel R. Williams, in his official capacity as fiduciary of the Pension Fund and Annuity

Plan; the Finishing Trades Institute; and Painting Industry Funds, Inc. (Painting Industry Funds)

initiated the above-captioned action pursuant to the Employee Retirement Income Security Act

of 1974 (ERISA), 20 U.S.C. § 1001 *et seq.*, alleging that Defendant Industrial Painting and

Rigging, Inc. (Industrial Painting) failed to pay required contributions.  ECF No. 1.  With the

parties' consent, this case was referred to the undersigned for all proceedings pursuant to 28

U.S.C. § 636(c) and Local Rules 301 and 302 (D. Md. Dec. 1, 2025).  ECF Nos. 13, 15–17.

Pending before the Court is the question of damages with respect to the unopposed motions for

default judgment filed by the Pension Fund, Mr. Williams, and the Finishing Trades Institute

(collectively, the IUPAT Plaintiffs) and Painting Industry Funds.  ECF Nos. 46–47.  For the

reasons set forth below, judgment is entered in favor of the IUPAT Plaintiffs and against

Industrial Painting in the amount of $209,709.27, and in favor of Painting Industry Funds and

against Industrial Painting in the amount of $345,509.09.

## I.    BACKGROUND

On July 9, 2026, the undersigned granted the IUPAT Plaintiffs' and Painting Industry Funds' motions for default judgment with respect to liability and reserved decision on the question of damages.[1]  ECF Nos. 48–49; *International Painters & Allied Trades Indus. Pension Fund* v. *Industrial Painting & Rigging, Inc.*, Civil Action No. EA-24-3564, 2026 WL 2010083 (D. Md. July 9, 2026).  The undersigned concluded that the "existing record provides an inadequate basis upon which to evaluate the availability of several categories of the requested relief."  *Id.* at *5.  With the Court's permission, the IUPAT Plaintiffs and Painting Industry Funds supplemented their motions on July 17, 2026.  ECF No. 50.  Industrial Painting was served with a copy of Plaintiff's supplemental filing but did not respond to Plaintiffs' initial motions or supplemental filings.  *E.g.*, ECF No. 50 at 16 (certificate of service).[2]

## II.    DISCUSSION

Federal Rule of Civil Procedure 55 governs entries of default and default judgments. When the party's claim is not for "a sum certain" or "a sum that can be made certain by computation," the party must apply to the court for a default judgment."  Fed. R. Civ. P. 55(b). While "the well-pled allegations in a complaint as to liability are taken as true . . . the allegations as to damages are not."  *Securities & Exch. Comm'n* v. *Lawbaugh*, 359 F. Supp. 2d 418, 422 (D. Md. 2005).  Thus, if the Court determines that the well-pleaded allegations are sufficient to establish liability, it must then determine the appropriate amount of damages or other relief.  *Frozen Wheels, LLC* v. *Potomac Valley Home Med., Inc.*, Civil Action No. CCB-20-2479,

---

[1]  The pertinent factual background is set forth in the Court's prior memorandum opinion. ECF No. 48; *International Painters & Allied Trades Indus. Pension Fund* v. *Industrial Painting & Rigging, Inc.*, Civil Action No. EA-24-3564, 2026 WL 2010083  (D. Md. July 9, 2026).

[2]  Page numbers refer to the pagination of the Court's CM/ECF system printed at the top of the cited document.

2024 WL 1132092, at *3 (D. Md. Mar. 15, 2024) (Coulson, J.); *Entrepreneur Media, Inc.* v. *JMD Ent. Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013). This requires the Court to make an independent determination that is "supported by evidence introduced either at a hearing or by affidavit or other records." *Select Specialty Hosp. - Quad Cities, Inc.* v. *WH Adm'rs, Inc.*, Civil Action No. PX-18-03586, 2020 WL 4569521, at *3 (D. Md. Aug. 7, 2020); *Entrepreneur Media, Inc.*, 958 F. Supp. 2d at 593; *see also Frozen Wheels, LLC*, 2024 WL 1132092, at *3 ("A plaintiff's assertion of a sum in a complaint does not make the sum 'certain' unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence."). When evaluating damages, the Court may "conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), although an evidentiary hearing is not required in every circumstance. *Monge* v. *Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases).

Having previously found Industrial Painting liable, the remaining issue is the scope of available relief. The pertinent civil enforcement section of ERISA provides, in relevant part, that "[in] any action . . . by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan" unpaid contributions, interest on the unpaid contributions, the greater of interest on the unpaid contributions or liquidated damages, reasonable attorney's fees and costs, and any other legal or equitable relief the Court deems appropriate. 29 U.S.C. § 1132(g)(2); *see also International Painters & Allied Trades Indus. Pension Fund* v. *Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685-686 (D. Md. 2013) (applying Section 1132(g)(2) in an action to enforce Section 1145 against an employer delinquent on contributions to an ERISA pension plan).

Here, the IUPAT Plaintiffs assert that Industrial Painting is liable for $2,471,498.08, which they calculate as including: (1) contribution underpayments, administrative dues,

3

liquidated damages, interest, and audit costs totaling $108,534.20; (2) liquidated damages and interest on late-paid contributions totaling $3,166.38; (3) estimated contributions, liquidated damages, and interest totaling $2,342,689.10; and (4) attorney's fees and costs totaling $17,108.40.  ECF No. 46-2 at 8–9.  Painting Industry Funds asserts that Industrial Painting is liable for $306,713.44, which it calculates as including: (1) contribution underpayments, working dues, liquidated damages, and interest totaling $187,682.70[3]; (2) unpaid contributions, liquidated damages, and interest totaling $111,103.09, and (3) attorney's fees totaling $7,927.65.  ECF No. 47-2 at 8.  Plaintiffs further contend that interest continues to accrue on all unpaid contributions through the date paid.  ECF Nos. 46-2 at 9; 47-2 at 8.  In support of these claimed amounts, Plaintiffs rely on declarations from the IUPAT Plaintiffs' Audit and Collections Director and Painting Industry Funds' Administrator and other documentary evidence.  ECF Nos. 46-3; 46-4; 47-3; 47-4; 50-1; 50-2; 50-3; 50-4; 50-5.  The IUPAT Plaintiffs' Audit and Collections Director and Painting Industry Funds' Administrator each attested that their duties include maintaining the records of each person, company, or corporation obligated to remit funds; maintaining records of contributions; and managing the audit program.  ECF Nos. 46-3 ¶ 1; 47-3 ¶ 1.  These individuals attested that they have personal knowledge of Plaintiffs' business records and that Plaintiffs are owed unpaid contributions, interest, liquidated damages, and audit costs.  ECF Nos. 46-3; 47-3; 50-1 ¶ 1; 50-3 ¶ 1.  Plaintiffs also rely on the declaration of their lead counsel and billing records to support their request for attorney's fees and costs.  ECF Nos. 46-5; 46-6; 47-5; 47-6.  Each category of damages is addressed in turn below.

---

[3]  In a supplemental declaration, the Administrator of Plaintiff Painting Industry Funds, LLC (Painting Industry Funds) attested that the interest due on this amount is actually $47,832.01, not $42,990.25 as he attested in his initial declaration.  ECF No. 50-1 ¶ 4(a) n.2 ("In confirming the calculation of the interest amount provided in my prior Declaration in Support of the Painting Industry Fund's Motion for Default Judgment, I discovered that the correct amount due is $47,832.01."); *see also* ECF No. 47-3 ¶ 9.

**A.      Contributions**

The IUPAT Plaintiffs' Audit and Collections Director attested that Industrial Painting owes $65,225.63 in contribution underpayments.  ECF Nos. 46-3 ¶ 9.  This amount is substantiated by an audit and will be awarded.  ECF No. 46-4 at 36.

The Audit and Collections Director further attested that Industrial Painting owes an additional $1,739,580.87 in estimated unpaid contributions for the months Industrial Painting failed to report and pay contributions, and that these estimated contributions were calculated pursuant to the Pension Fund's collection procedures.  ECF No. 46-3 ¶¶ 17–18.  The collection procedures, as described in a supporting declaration, provide that "where the Contributing Employer fails or refuses to submit a missing contribution report(s), [unreported contributions] shall be estimated based on the last report submitted, on the average of the last three (3) months reported, or on the average of the last three (3) months, whichever is greater." *Id.* at ¶ 16 (italics removed).  The Audit and Collections Director attested that Industrial Painting failed to report and pay contributions to various District Councils between January 2023 and February 2026, and that his office calculated the estimated amount of unreported and unpaid contributions.[4] *Id.* at ¶¶ 16–17.

In his supplemental declaration, the Audit and Collections Director attested that these calculations were based on the average amount of the last three months Industrial Painting failed to report and pay contributions.  ECF No. 50-3 ¶ 7.  The IUPAT Plaintiffs explained, and documented, that with respect to District Council 6, Local Union 476, the last three months

---

[4]  Defendant Industrial Painting and Rigging, Inc. is alleged to have failed to report and pay contributions as follows: "January 2023; January 2024 through February 2024; November 2024 through February 2026 (to District Council 6, ADM account); May 2023 and October 2024 through February 2026 (to District Council 6, Local Union 476); October 2024 through February 2026 (to District Council 51); October 2024 through February 2026 (to District Council 53); and October 2024 through February 2026 (to District Council 91)."  ECF No. 46-3 ¶ 15.

Industrial Paining reported and made contributions were July through September 2024; the average amount of Industrial Painting's contributions during these three months was $3,664.90; and that Industrial Painting failed to report and pay contributions to District Council 6, Local Union 476 for 18 months, resulting in $65,968.20 due in estimated contributions. ECF Nos. 50 at 7–8; 50-3 ¶ 7; 50-5. The IUPAT Plaintiffs did not, however, provide supporting documentation with respect to the other amounts of estimated contributions, which the IUPAT Plaintiffs contend total more than $1.6 million. ECF No. 46-3 ¶ 17.

In the prior Memorandum Opinion, the undersigned identified gaps in the evidentiary record with respect to several categories of damages. *Industrial Painting & Rigging, Inc.*, 2026 WL 2010083, at *5. As to estimated contributions, the undersigned noted:

> The IUPAT Plaintiffs also seek more than $2.3 million in damages based on estimated contributions. At present, there is an inadequate factual basis upon which to award such an amount. The IUPAT Plaintiffs identify, at a high level, the methodology for their estimate of unreported and unpaid contributions, which involves calculating an average of the last three months of reported contributions. The IUPAT Plaintiffs tender a sworn declaration that outlines the calculation of this average for various district councils, *but they do not provide a declaration or any documentation supporting those calculations or substantiating the unreported and unpaid payments that constitute the multiplier*.

*Id.* (emphasis added, internal record citations omitted). To be sure, because of Industrial Painting's "failures to pay all contributions owed, to maintain pertinent records, and to prove the precise amount of damages by some other evidence," the IUPAT Plaintiffs "are entitled to a damages award in an amount approximated as a matter of just and reasonable inference." *Sheet Metal Workers' Health & Welfare Fund of N. Carolina* v. *Stromberg Metal Works, Inc.*, 118 F.4th 621, 635 (4th Cir. 2024). Nevertheless, there must be "sufficient evidence to show the amount of hours worked as a matter of just and reasonable inference." *Id.* at 637.

6

Here, the IUPAT Plaintiffs had an opportunity to supplement the record, yet they still have not addressed the concerns identified in the prior Memorandum Opinion.  ECF Nos. 49 ¶ 3; 50.  It is unclear why the IUPAT Plaintiffs provided supporting documentation for the estimated contributions due to District Council 6, Local Union 476 but did not do so for the other entities.  As a result of their partial supplementation, the record lacks documentation substantiating the inputs used to calculate estimated contributions for four of the five District Councils.  The undersigned declines to award damages for estimated contributions in a case proceeding in a default posture without adequate supporting documentation because it is not possible to verify that the proffered amounts—several of which contain inaccuracies—are approximated as a matter of just and reasonable inference.  *Sheet Metal Workers' Health & Welfare Fund of N. Carolina*, 118 F.4th at 635; footnote 4, *supra*; II.D. & footnote 7, *infra*; II.F., *infra*.  The undersigned will therefore award $65,968.20 in estimated contributions, which is the amount substantiated with documentary evidence.

The Administrator of Painting Industry Funds attested that Industrial Painting owes $110,231.40 in underpaid contributions and $83,851.39 in unpaid contributions.  ECF No. 47-3 ¶¶ 9, 11.  The contribution underpayments are supported by an audit.  ECF No. 47-4 at 30.  The unpaid contributions are supported by Industrial Painting's November 2024 contribution report, which was tendered in connection with Plaintiffs' supplemental filing.  ECF No. 50-2; *see also* ECF No. 50-1 ¶ 3.  The Court will award the requested amounts of underpaid and unpaid contributions.

**B.     Dues**

The IUPAT Plaintiffs also seek $796.20 in administrative dues.  ECF Nos. 46-2 ¶ 9; 46-3 ¶ 9.  In his supplemental declaration the IUPAT Plaintiffs' Audit and Collections Director attested as to the manner in which this amount was calculated, and the amount is substantiated by an

audit.  ECF Nos. 46-4 at 30–36; 50-3 ¶ 3.  Painting Industry Funds seeks $12,414.77 in working dues (also known as administrative dues).  ECF Nos. 47-3 ¶ 9; 50-1 ¶ 5.  In his supplemental declaration, the Administrator of Painting Industry Funds attested as to the manner in which these dues were calculated, and the amounts owed are documented in an audit report.  ECF Nos. 47-4 at 26–30; 50-1 ¶ 5.  The undersigned will award the requested amounts of dues.

## C.     Interest

Section 1132 provides for an award of interest on delinquent contributions "determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26."  29 U.S.C. § 1132(g)(2).  The IUPAT Plaintiffs' Audit and Collections Director attested that interest is calculated at the variable Internal Revenue Service rate through January 21, 2023.  ECF No. 46-3 ¶ 9.  He further attested that, as of February 1, 2023, the Pension Fund's Board of Trustees changed the interest rate on delinquent contributions from the 26 U.S.C. § 6621 statutory interest rate to 10 percent per annum.  *Id.*  The Administrator of Painting Industry Funds attested that the Boards of Trustees, via rules and regulations, set the interest rate at 18 percent per annum, or 1.5 percent per month, until paid.  ECF No. 47-3 ¶¶ 7, 9, 13.

The Audit and Collections Director initially attested that his office had calculated the amounts owed, including liquidated damages and interest.  ECF No. 46-3 ¶ 9; *see also id.* at ¶¶ 17, 21.  Similarly, the Administrator initially attested that his office had calculated the amount of interest owed on underpaid contributions.  ECF No. 47-3 ¶ 9.  In the prior Memorandum Opinion, the undersigned noted that "the manner in which Plaintiffs calculate interest" was "unclear."  *Industrial Painting & Rigging, Inc.*, 2026 WL 2010083, at *5.  Specifically, the undersigned noted that Plaintiffs did not "offer[ ] actual calculations" and relied "only by spreadsheets that total sums without any underlying documentation or explanation of the formula utilized to calculate the claimed amounts."  *Id.*

8

In his supplemental declaration, the Audit and Collections Director explained in greater detail the interest calculations, including how the spreadsheet used to calculate interest had been developed. ECF No. 50-3 ¶¶ 4–6. His supplemental declaration is supported by a spreadsheet that "shows all of the applicable rates that were programmed into" the spreadsheet initially tendered in support of the requested interest award. *Id.* at ¶ 4; *see also* ECF Nos. 46-4 at 37–38; 50-4. Interest will be awarded to the IUPAT Plaintiffs in the amount of $29,212.47, which is the sum of $23,587.25 due on the underpaid contributions identified through the audit; $248.38 due on late-paid contributions; and $5,376.84 due on the unpaid estimated contributions owed to District Council 6, Local Union 476. ECF Nos. 46-3 ¶¶ 9, 12, 17, 21; 46-4 at 39. The Administrator also detailed in his supplemental declaration the manner in which his office had calculated interest owed on underpaid contributions, substantiated by the audit report, and on unpaid contributions, substantiated by Industrial Painting's November 2024 contribution report. ECF Nos. 47-4 at 30; 50-1 ¶ 4; 50-2. The undersigned will award Painting Industry Funds the requested $47,832.01 for interest accrued on the underpaid contributions and the $18,866.56 for interest accrued on the unpaid contributions, which total $66,698.57. ECF No. 50-1 ¶ 4.

Plaintiffs also seek post-judgment interest. ECF Nos. 46-2 at 2; 47-2 at 6. Federal law provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *see also Select Specialty Hosp. – Quad Cities, Inc.*, 2020 WL 4569521, at *7 (28 U.S.C. § 1961 governs the question of post-judgment interest in an ERISA case). Based on this statutory command, this Court has found that an award of post-judgment interest is unnecessary. *E.g., Concentric Methods, LLC* v. *Cillian Techs., LLC*, Civil Action No. DKC-11-1130, 2011 WL 6180143, at *2 (D. Md. Dec. 12, 2011) (finding that an "award of post-judgment interest need not be specifically granted because a plaintiff is entitled to recover such interest by operation of law"). Nevertheless, this Court routinely includes an award of post-

judgment interest when entering a default judgment in an ERISA case such as this. *E.g., Trustees of Nat'l Elec. Benefit Fund* v. *All Nu Elec. Contracting Corp.*, Civil Action No. GJH-22-0544, 2023 WL 1416553, at *3 (D. Md. Jan. 31, 2023); *Trustees of Ironworkers Local Union No. 16 Pension Plan* v. *Bryant Concrete Construction, Inc.*, Civil Action No. DLB-18-3681, 2020 WL 134575, at *12 (D. Md. Jan. 10, 2020); *International Painters and Allied Traders Indus. Pension Fund* v. *Williamsport Mirror & Glass*, Civil Action No. WDQ-14-3134, 2015 WL 14033387, at *1 (D. Md. Mar. 31, 2015); *International Painters & Allied Trades Indus. Pension Fund* v. *3 R Painting & Contracting Co., Inc.*, Civil Action No. RDB-12-272, 2013 WL 424694, *7 (D. Md. Jan. 31, 2013). Accordingly, the Court includes in its judgment in favor of both the IUPAT Plaintiffs and Painting Industry Funds an award of post-judgment interest, calculated in accordance with 28 U.S.C. § 1961, that will continue to accrue until the judgment is satisfied.[5]

### D.    Liquidated Damages

When an employer is found to be delinquent on contributions, the Court "shall award," among other things, "an amount equal to the greater of --(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the amount of unpaid contributions." 29 U.S.C. § 1132(g)(2)(C). Here, the bargaining agreements provide that contributing employers who default in payment shall be assessed liquidated damages. ECF Nos. 46-4 at 6, 18; 47-4 at 6, 18.

The IUPAT Plaintiffs' Audit and Collections Director attested that, in this case, liquidated damages are assessed at a rate of 20 percent. ECF No. 46-3 ¶¶ 9, 13, 17, 19. The IUPAT Plaintiffs seek a total of $363,879.29 in liquidated damages, which includes liquidated damages

---

[5] This interest is calculated "from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961.

based on underpaid contributions identified through the audit ($13,045.12), late-paid

contributions ($2,918.00), and estimated contributions ($347,916.17).  ECF No. 46-2 at 9, 16;

46-3 ¶¶ 9, 12, 17, 21; 46-4 at 39–41.  Liquidated damages will not be awarded on the amounts of

estimated contributions that are unsubstantiated and, thus, unawarded.  As to the underpaid

contributions identified through the audit, liquidated damages calculated at 20 percent of

underpaid contributions equals $13,045.13, whereas the accrued interest on this same amount is

$23,587.25.[6]  ECF No. 46-3 ¶¶ 9, 21; *see also* II.C, *supra*.  With respect to late-paid and

estimated contributions, liquidated damages are $2,918.00 and $13,193.64, respectively.[7]  ECF

No. 46-3 ¶¶ 12, 17, 21.  The corresponding amounts of accrued interest are $248.38 and

$5,376.84, respectively.  *Id.*  The total amount of liquidated damages ($29,156.77) is therefore

slightly less than the total amount of accrued interest ($29,212.47).  Based on the comparative

values, as to the IUPAT Plaintiffs, the undersigned will enter a second award of interest on

unpaid contributions in the amount of $29,212.47 in lieu of liquidated damages.  29 U.S.C.

§ 1132(g)(2)(C); ECF No. 46-2 at 12 (seeking liquidated damages because, by IUPAT

calculations, it was a greater amount than a second award of interest).

Painting Industry Funds seeks $30,431.42 in liquidated damages, which it contends is the

sum of 20 percent liquidated damages for underpaid contributions identified by an audit

($22,046.28) and 10 percent liquidated damages for late-paid contributions ($8,385.14).  ECF

Nos. 47-2 at 8; 47-3 ¶¶ 9, 11.  The manner of calculation of liquidated damages is therefore

inconsistent, both in application and attestation.  The Administrator of Painting Industry Funds

---

[6]  Plaintiffs calculate 20 percent liquidated damages to be $13,045.12, but appropriate rounding makes this number one cent higher.  ECF No. 46-3 ¶ 9.

[7]  As discussed previously, *see* II.A, *supra*, damages for estimated contributions are awarded only with respect to District Council 6, Local Union 476 due to the lack of supporting documentation for the estimated contributions owed to the other District Councils.

11

attested that the Board of Trustees, via rules and regulations, set liquidated damages at a rate of 10 percent.  ECF No. 47-3 ¶¶ 7, 10; *see also id.* at ¶¶ 11–12.  Elsewhere in his initial declaration, the Administrator assessed liquidated damages at 20 percent without substantiation or citation to the record.  *Id.* at ¶¶ 9, 14.  This inconsistency is replicated in Painting Industry Funds' motion, supporting memorandum of law, and proposed order.  ECF Nos. 47 ¶ 11(a); 47-1 at 1; 47-2 at 8–10.  While the audit report calculated liquidated damages in the amount of 20 percent (ECF No. 47-4 at 30), a review of the record confirms that the Boards of Trustees set liquidated damages at 10 percent (*id.* at 24), which is the rate at which the Court calculates liquidated damages.  Ten percent of the total underpaid and unpaid contributions ($194,082.79) is $19,408.28, which is less than the amount of the accrued interest ($66,698.57).  *See* II.A., II.C., *supra*.  Accordingly, as to Painting Industry Funds, the Court will enter a second award of interest in the amount of $66,698.57 in lieu of liquidated damages.  29 U.S.C. § 1132(g)(2)(C).

### E.    Audit Costs

The Court may also award any legal or equitable relief that it deems appropriate. 29 U.S.C. § 1132(g)(2)(E).  Here, the bargaining agreements provide that Plaintiffs may assess and collect the cost of performing an audit.  ECF Nos. 46-4 at 7, 18; 47-4 at 6–7, 18.  The IUPAT Plaintiffs contend that Industrial Painting should be required to pay the cost of the audit ($5,880.00).  ECF Nos. 46-2 at 9, 16; 46-3 ¶ 9.  Such an award is appropriate under governing case law.  *Security Workers Health and Welfare Fund* v. *Mid-Atlantic Sec. Services, Inc.*, 11 Fed. Appx. 51, 53 (4th Cir. 2001); *International Painters & Allied Trades Indus. Fund* v. *Libmak Co., LLC*, Civil Action No. ELH-12-1125, 2012 WL 5947335, at *2 (D. Md. Nov. 27, 2012).  The Court therefore awards the IUPAT Plaintiffs $5,880.00 in audit costs.

F.        **Attorney's Fees and Costs**

By statute, Plaintiffs are entitled to recover attorney's fees in a civil ERISA enforcement action.  29 U.S.C. § 1132(g)(2)(D) (directing that the court "shall award," among other things, "reasonable attorney's fees and costs of the action"); *see also Trustees of Elec. Welfare Trust Fund* v. *Third Generation Electric, LLC*, Civil Action No. PX-18-0051, 2021 WL 82936, at *4 (D. Md. Jan. 11, 2021) (29 U.S.C. § 1132(g) entitles plaintiffs to attorney's fees).  The bargaining agreements at issue here also provide for payment of attorney's fees and costs incurred in both Plaintiffs' collections of delinquent payments.  ECF Nos. 46-4 at 7, 18; 47-4 at 7, 18. Accordingly, there is also a contractual basis for the recovery of attorney's fees and costs.

Plaintiffs' counsel attested that as a result of their efforts to collect unpaid, delinquent contributions from Industrial Painting, the IUPAT Plaintiffs incurred $16,603.40 in attorney's fees from July 18, 2024, through February 28, 2026, and $505.00 in costs, which total $17,108.40.  ECF No. 46-5 ¶¶ 8, 11.  Plaintiffs' counsel further attested that from April 17, 2025, through February 28, 2026, Painting Industry Funds incurred $7,927.65 in attorney's fees as a result of its attempts to collect their share of the contributions.  ECF No. 47-5 ¶ 8.  The amounts of claimed attorney's fees and costs are substantiated by sworn declarations and billing records. ECF Nos. 46-5; 46-6; 47-5; 47-6.  A review of the proffered attorney's fees calculations, however, revealed that both totals are incorrect.  Following an accounting Plaintiffs' billing invoices tendered in support of their fee request, the Court determined that counsel and legal staff actually billed a total of $17,212.40 for their work on behalf of the IUPAT Plaintiffs and a total of $7,485.85 for their work on behalf of Painting Industry Funds.  ECF Nos. 46-6; 47-6. The undersigned utilizes these corrected sums when assessing attorney's fees.

When calculating an award of attorney's fees, the Fourth Circuit uses the "lodestar" method.  *Robinson* v. *Equifax Information Services, LLC*, 560 F.3d 235, 243 (4th Cir. 2009).

13

First, the Court must multiply "the number of hours reasonably expended on the litigation . . . by a reasonable hourly rate." *Hensley* v. *Eckerhart*, 461 U.S. 424, 433 (1983). Then, the specific facts of the case should be considered in calculating a reasonable figure, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Barber* v. *Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the factors set forth in *Johnson* v. *Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974)); *see also Trustees of Elec. Welfare Trust Fund*, 2021 WL 82936, at *4 (applying the *Johnson* factors to assessment of an ERISA civil enforcement action fee award). The Court is not required to analyze each factor individually or even to examine every factor, but may, instead, consider the factors as a whole. *Martin* v. *Mecklenburg Cnty.*, 151 Fed. Appx. 275, 283 (4th Cir. 2005); *Parker* v. *Reema Consulting Servs., Inc.*, Civil Action No. TDC-17-1648, 2022 WL 2905475, at *3 (D. Md. July 21, 2022).

In determining whether the attorneys' hourly rates are reasonable, the undersigned finds most relevant *Johnson* factors five (customary fees for like work) and nine (experience and ability). Appendix B to this Court's Local Rules, which outlines guidelines for determining reasonable attorney's fees, provides that the Fitzpatrick Matrix[8]—with a reduction of 5 to 20

---

[8] The Fitzpatrick Matrix is a "matrix of hourly rates for attorneys of varying experience levels and paralegals/law clerks" developed by the Civil Division of the United States Attorney's Office for the District of Columbia "to assist with resolving requests for attorney's fees." U.S. Attorney's Office for the District of Columbia, Civil Division, *The Fitzpatrick Matrix,*

14

percent to account for differences between the District of Columbia and Maryland markets—may be a useful guideline for determining reasonable hourly rates. Local Rule Appx. B.3 (Guidelines Regarding Hourly Rates). A district court "may consider, but is not bound by" fee matrices, which can be a "useful starting point to determine fees." *De Paredes* v. *Zen Nails Studio LLC*, 134 F.4th 750, 753-754 (4th Cir. 2025) (holding that a district court may not treat a fee matrix contained in its local rules as "presumptively reasonable" and require special justification to deviate from it) (quoting *Newport News Shipbuilding & Dry Dock Co.* v. *Holiday*, 591 F.3d 219, 229 (4th Cir. 2009)).

Plaintiffs' lead counsel attested that: (1) she billed at an hourly rate that ranged between $350 and $370; (2) co-counsel billed at an hourly rate of $350; and (3) four paralegals billed at hourly rates that ranged between $185 and $220. ECF Nos. 46-5 ¶ 7; 47-5 ¶ 7. The rates for counsel and the paralegals are amply supported by their respective experience and are well within the guidelines for hourly rates set forth in the adjusted Fitzpatrick Matrix. ECF Nos. 46-5 ¶ 7(a); 47-5 ¶ 7(a) (attesting that lead counsel has been a practicing attorney for 32 years, with 23 years of ERISA litigation experience); ECF Nos. 46-5 ¶ 7(b); 47-5 ¶ 7(b) (attesting that co-counsel has been a practicing attorney for 12 years, with four years of ERISA litigation experience); ECF Nos. 46-5 ¶ 7(c); 47-5 ¶ 7(c) (attesting that a paralegal billing an hourly rate that ranged between $210 and $220 has over 20 years of experience, with 16 years of ERISA litigation experience); ECF No. 46-5 ¶ 7(d) (attesting that a paralegal billing an hourly rate of $185 has over 40 years of experience)[9]; ECF Nos. 46-5 ¶ 7(e); 47-5 ¶ 7(d) (attesting that a

_____

https://perma.cc/72WK-9YAK; *see also Schrider* v. *Devlin Contracting & Maint., Inc.*, Civil Action No. BAH-24-2978, 2026 WL 110330 at *5 (D. Md. Jan. 14, 2026) (using as guidance the Fitzpatrick Matrix, which "is endorsed by the Local Rules to assist in determining the reasonableness of fees").

[9] This paralegal did not work on the Painting Industry Funds. ECF No. 47-5 ¶ 7.

15

paralegal billing an hourly rate of $185 has over 17 years of experience); ECF No. 47-5 ¶ 7(f) (attesting that a paralegal billing an hourly rate of $210 worked the IUPAT Plaintiffs' claim "on a limited basis").[10]

Plaintiffs claim 42.90 in attorney hours and 46.25 in paralegal hours, for a total of 89.15 hours. ECF Nos. 46-6, 47-6. With respect to the hours, the undersigned finds modification necessary. First, examination of the billing records reveals multiple instances of two individuals billing for participation in the same activity, a practice this Court has previously disallowed. *E.g.*, *Maryland Electr. Indus. Health Fund* v. *Max Electr. Constr. Corp.*, Civil Action No. JRR-25-576, 2026 WL 1693772, at *4 (D. Md. June 11, 2026) (Crawford, J.) (recommending a reduction in hours due to, among other things, duplicative billing); *International Painters & Allied Trades Indus. Pension Fund* v. *Shoemaker LLC*, Civil Action No. ELH-24-3575, 2026 WL 1238546, at *15 (D. Md. May 6, 2026) (recognizing that while "[c]onferencing can be very useful for a variety of sound reasons . . . the Court is not required to impose on the defendant what is, to some extent, a duplicate billing").

Second, the number of hours attributable to the practice of multiple professionals billing for the same activity is difficult to discern due to counsel's block billing; that is, "grouping, or lumping, several tasks together under a single entry, without specifying the amount of time spent on each particular task." *Shoemaker LLC*, 2026 WL 1238546, at *13 (internal quotation marks and citation omitted); *see also Maryland Electr. Indus. Health Fund*, 2026 WL 1693772, at *4. As this Court has observed previously, "[w]here 'lumping' or other inadequate documentation is present in a fee application, courts may either identify and exclude improperly documented hours

---

[10]  Billing records reflect that this paralegal billed at an hourly rate of $205. ECF No. 46-6 at 8. Given that this paralegal worked only .50 hours (*id.*), the difference in the hourly rate identified in lead counsel's declaration and the billing records is immaterial.

or simply reduce the overall fee award by a fixed percentage or amount based on the trial court's familiarity with the case, its complexity, and the counsel involved." *International Painters & Allied Trades Indus. Pension Fund* v. *Finch Indus. Coatings LLC*, Civil Action No. ELH-18-2333, 2019 WL 6044197, at *8 (D. Md. Nov. 15, 2019) (Coulson, J.).

Finally, considering *Johnson* factors one (time and labor), two (novelty and difficulty), and twelve (awards in similar cases), the number of requested hours is unreasonable. "Similar default judgment cases in this district involving unpaid contributions under ERISA have approved between 7.75 and 37.75 total hours billed." *Maryland Electr. Indus. Health Fund*, 2026 WL 1693772, at *5 (collecting cases). Here, the total number of hours billed is more than double the upper end of that range. Plaintiffs do "not explain what made this case different or more difficult than prior cases, nor why so many hours were expended on a case which, eventually, was resolved on a Default Judgment." *Finch Indus. Coatings LLC*, 2019 WL 6044197, at *8. Plaintiffs contend that this is not an ordinary default judgment case because Industrial Painting was initially represented by counsel. ECF No. 50 at 9. Yet, the docket reflects that Plaintiff's initiated this action more than 17 months ago; that counsel entered an appearance on behalf of Industrial Painting for approximately five months; and that Industrial Painting has been unrepresented (and unresponsive) for the last 13 months. ECF Nos. 1; 5; 29; 50 at 9; *Industrial Painting & Rigging, Inc.*, 2026 WL 2010083, at *2. Further, billing records tendered in support of the requested fee award reflect that engagement with opposing counsel did not consume a significant portion of the billed hours. ECF Nos. 46-6, 47-6. The precise amount of time expended on engagement with opposing counsel is indeterminable due to the block billing, but it could not exceed a total of 6.10 hours on behalf of all Plaintiffs, which is the aggregate amount of billing entries that reference contact with opposing counsel. ECF Nos. 46-6, 47-6.

Based on the foregoing, the undersigned will reduce the corrected amounts of billed attorney's fees by 25 percent and award the IUPAT Plaintiffs $12,909.30 in attorney's fees and Painting Industry Funds $5,614.39 in attorney's fees, for a total amount of $18,523.69. "Even as adjusted, the total remains on the high end of the fees and costs awarded in similar cases in this district." *Finch Indus. Coatings LLC*, 2019 WL 6044197, at *10 (collecting cases) (recommending the award of $17,303.15 in fees and costs).

Additionally, the IUPAT Plaintiffs seek costs in the amount of $505.00 for filing and service fees, which are the type of expenses normally incurred in preparing a case for litigation. ECF No. 46-5 ¶ 11; *Capital Restoration & Painting Co.*, 919 F. Supp. 2d at 689. The Court will award the requested amount.

## III.    CONCLUSION

For the foregoing reasons, the Court awards the following damages:

|  | IUPAT Plaintiffs | Painting Industry Funds |
|---|---|---|
| **Contributions** | $131,193.83 | $194,082.79 |
| **Dues** | $796.20 | $12,414.77 |
| **Interest** | $29,212.47 | $66,698.57 |
| **Second Interest Award** | $29,212.47 | $66,698.57 |
| **Audit Costs** | $5,880.00 | |
| **Attorney's Fees** | $12,909.30 | 5,614.39 |
| **Costs** | $505.00 | |
| **TOTAL** | **$209,709.27** | **$345,509.09** |

Judgment is entered in favor of the IUPAT Plaintiffs and against Industrial Painting in the amount of $209,709.27 and judgment is entered in favor of Painting Industry Funds and against Industrial Painting in the amount of $345,509.09. A separate Order follows.

Date:  July 24, 2026

                                                    /s/
                                          Erin Aslan
                                          United States Magistrate Judge

18